**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**June 26, 2012**

# In the Court of Appeals of Georgia

A12A0030. LATIMORE v. VATACS GROUP, INC.          DO-001

DOYLE, Presiding Judge.

Yolanda Veronica Raybon Latimore brought this action to cancel a debt and enjoin foreclosure by Vatacs Group, Inc. (the "Lender"), on real property securing the debt. The trial court granted summary judgment to the Lender, and, for the reasons that follow, we affirm in part and reverse in part.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

So viewed, the record shows that on August 24, 1992, Latimore's mother, Shirley Raybon, executed a note promising to repay the lender[2] $33,600 with an annual interest rate of 17.5 percent and monthly payments of $529.06 beginning on September 28, 1992, and ending on August 28, 2007. In connection with the note, Raybon also executed a security deed making certain real property collateral on the debt. Raybon fell behind in payments, and in November 1995, she filed for Chapter 13 bankruptcy protection. Apparently around this time, Raybon's monthly payment amount was reduced to $462.77, which was $66.29 lower than the monthly payment provided for in the note under the original amortization schedule.[3] Raybon again fell behind in her payments and, in June 2000, again filed for bankruptcy protection. The Lender filed a proof of claim showing an outstanding principal balance of $32,582.94 and an arrearage of $15,697.46.

In 2002, the second bankruptcy action was dismissed by the bankruptcy court, and in 2003, Raybon died. Latimore took title to the property under Raybon's will, and after unsuccessfully attempting to collect on the note from Raybon's estate, the

___

[2] The original lender was Mortgage Makers, Inc. It is undisputed that Vatacs Group, Inc. is the last successor to the original lender's interest in the note.

[3] The note itself was never amended.

Lender initiated foreclosure proceedings against the property in 2009. Latimore filed the present suit seeking to enjoin the foreclosure and cancel the debt, later paying into the registry of the court $15,322.50, which she alleged was the maximum outstanding debt.

After the Lender filed an answer and responded to Latimore's first discovery request, the trial court entered a temporary restraining order enjoining any foreclosure of the property and thereafter entered an interlocutory injunction to the same effect. After further discovery, the Lender moved for summary judgment, which motion was granted, including an award to the Lender of the $15,322.50, giving rise to this appeal.

1. Latimore contends that the trial court erred by concluding that the debt was not made usurious by the Lender's lowering of the monthly payment amount, which lower amount did not fully cover the interest owed on the note. Under this circumstance, Latimore argues, she would never satisfy the debt by paying the lower requested amount. Nevertheless, the stated interest rate of the loan, 17.5% annually, was not in excess of the maximum applicable legal rate of 5 percent per month.[4] "The

---

[4] See OCGA §§ 7-4-2 (a) (1) (A) (allowing certain parties to agree to any interest rate subject to the limit in OCGA § 7-4-18 (a), which prohibits loans with interest rates greater than 5 percent per month).

3

taint of usury does not result from payment, but from the agreement, performed or unperformed. Thus, to constitute usury, it is essential that there be, at the time the contract is executed, an intent on the part of the lender to take or charge for the use of money a higher rate of interest than that allowed by law."[5] The note contains a rider, signed by Raybon, stating that in no event shall the Lender retain interest charges of more than 5 percent per month. Under these circumstances, the trial court did not err by rejecting Latimore's argument that the Lender's temporary acceptance of lowered payments without waiving full payment[6] transformed the loan into a usurious transaction.[7]

---

[5] (Citation omitted.) *Holt v. Rickett*, 143 Ga. App. 337, 339 (3) (238 SE2d 706) (1977). See also *Bellerby v. Goodwyn*, 112 Ga. 306, 308 (37 SE 376) (1900) (the party claiming usury has the burden to show the lender's "intention at the time of the transaction to charge more interest for the use of money than the law allows, which is an essential ingredient of usury").

[6] The note provided that Latimore had waived presentment and notice of failure to fully pay.

[7] See *Byrd v. Equitable Life Assurance Society*, 185 Ga. 628, 641 (4) (196 SE 63) (1938) ("a contract to pay eight [percent] per annum semi[-]annually, with interest on the semi[-]annual payments of interest after due, does not constitute usury") (punctuation omitted); *Wardlaw v. Woodruff*, 175 Ga. 515, 517 (11) (165 SE 557) (1932) (same); *Merck v. American Freehold Land Mtg. Co.*, 79 Ga. 213, 233 (3) (7 SE 265) (1887) ("That a stipulation for interest on interest overdue . . . is valid, has been so often ruled that we do not consider [it] an open question.").

2. Latimore next contends that the trial court erred by awarding the Lender the $15,322.50 she paid into the court registry because the Lender did not seek those funds in the litigation. Latimore points to the following colloquy between the Lender's counsel and the trial court:

> Court: Are you saying today that you have a right to foreclose and you're entitled to the fifteen thousand dollars?
>
> Counsel: No, sir. If I did that, I've got a problem. That's why it was taken out of court. No, no. Your Honor knows –
>
> Court: Okay. Well, I did want to make sure.
>
> Counsel: I know. You know I have – I've got an either/or remedy. My remedy – they can keep the fifteen thousand – my remedy is all I want to do is they're in default on the security deed, they're in default on the note; I want to foreclose. I have been trying to foreclose since – well, we filed suit in Fulton County, I guess Your Honor knew that, in June or July. I ran an ad in June, July, August, September – I didn't run an ad this month because I was waiting for Your Honor's ruling.
>
> . . .
>
> Counsel: . . . And one other thing is that let's assume for the sake of argument – and, again, I think Your Honor makes a very good point I really wasn't thinking about – was that we're not really here to collect

on the note. I don't care if the note's ten dollars, thirty-five thousand, fifteen. I mean –

Court: Notes are things we deal with [a lot] nowadays. Everybody wants the property and the money.

Counsel: Right. Well, in fact, we don't care about the money.

Court: Under current financial conditions.

Counsel: So as far as we're concerned, there's a default. Whatever that default may be, we don't care; we want to have the right to foreclose. That's it.

Despite these statements by the Lender, the trial court awarded the Lender $15,322.50.

The law of this [S]tate is well settled that a secured creditor is vested with an election of remedies and may, either consecutively or concurrently, pursue any number of consistent remedies to enforce the payment of a debt until it is satisfied. Upon default in payment, the creditor may elect to sue the debtor on the note, without exercising the power of sale, or he may do either. Also he may pursue both remedies concurrently until the debt is satisfied.[8]

---

[8] (Citation and punctuation omitted.) *Reese Developers, Inc. v. First State Bank*, 306 Ga. App. 13, 14 (701 SE2d 505) (2010).

6

Thus, the Lender was entitled to pursue foreclosure or make a claim on the note, even concurrently. But, consistent with trial counsel's argument, the Lender in this case did not pursue a claim for payment on the debt. The present case arises solely from Latimore's complaint to enjoin a foreclosure and cancel the debt, and as explained by counsel at trial, the Lender had not pursued any claim on the debt in this action and had indeed filed no counterclaim on the debt in this case. The Lender merely moved for summary judgment on the plaintiff's claims. Thus, based on the procedural posture and the Lender's argument to the trial court, there was no basis for a monetary award to the Lender in the present case. Accordingly, to the extent that the trial court awarded the Lender relief other than denying Latimore's claim, it erred.

3. Finally, Latimore contends that the trial court's grant of summary judgment was improper in light of her pending motion to compel discovery that was never ruled upon. At trial, her motion focused on alleged inadequate discovery responses as to when the lowered monthly payment amounts were sent to Latimore and what the Lender paid to acquire her loan. "As a general rule, this Court does not condone the grant of summary judgment while a motion to compel discovery is pending, unless it can be determined that the disallowed discovery would add nothing of substance

to the party's claim."[9] Based on our conclusion in Division 1, the disputed discovery items would not add to her claim because such information does not bear on the usury analysis and any such information would not create a genuine issue of material fact.[10] Therefore, this enumeration does not require reversal of the grant of summary judgment as to Latimore's claim for an injunction.

*Judgment affirmed in part; reversed in part. Andrews and Boggs, JJ., concur.*

---

[9] (Punctuation omitted.) *Parks v. Hyundai Motor America, Inc.*, 258 Ga. App. 876, 877 (1) (575 SE2d 673) (2002).

[10] Latimore's remaining enumeration, that summary judgment was precluded by such factual issues, is without merit.